DECISION AND JOURNAL ENTRY
{¶ 1} Appellant/Cross-Appellee, Joan Klausman ("Joan"), appeals, and Appellee/Cross-Appellant, Charles William Klausman ("Charles"), cross-appeals, from the judgment of the Summit County Court of Common Pleas, Domestic Relations Division. We affirm in part, reverse in part, and remand
 I. {¶ 2} Joan and Charles were married in Louisville, Kentucky on October 10, 1992. They had one child during the marriage, A.K., who was born on March 19, 1993. Prior to their marriage, Joan and Charles moved to Louisville, Kentucky, where they purchased a home and lived together for approximately one year prior to their marriage. In August 1991, Charles started a new job in Kentucky with Rally's, Inc., as vice president and general counsel. On August 9, 1991, Charles signed an incentive stock option agreement with Rally's, Inc., which was valued at $30,000.00, and which he could not exercise until six months after this date. Charles first exercised 7,500 of these stock options in the summer of 1992.
 {¶ 3} On June 5, 2002, Joan filed a complaint for divorce that also requested temporary and permanent custody of their minor child, A.K., child support, spousal support, and an equitable division of the parties' property.[1] On July 8, 2002, Charles filed an answer and counterclaim also seeking, inter alia, a divorce, temporary and permanent custody of A.K., child support, an equitable division of the marital estate, and an award of his premarital property. Both parties cited incompatibility as the reason for their divorce.
 {¶ 4} The matter was scheduled for trial on July 24, 2003. Thereafter, a subpoena was issued to Edwin Shaw Hospital for the production of records relating to an alcohol evaluation performed there on Joan. Joan's counsel filed a motion in limine to prevent the production of these records.[2] Charles' counsel filed a motion to compel the production of these records.
 {¶ 5} A trial was held on July 24, 2003. At the beginning of the trial, the court heard Joan's motion in limine. The court overruled the motion, and expressly ordered these records to be produced at trial. On August 6, 2003, the trial court issued a judgment entry that granted Joan and Charles a divorce, awarded spousal support to Joan, and designated Charles as the residential parent and legal custodian of A.K. It is from this judgment entry that both Joan and Charles now appeal.
 {¶ 6} Joan timely appealed, asserting four assignments of error for review. Charles filed a timely notice of cross-appeal, and asserts one cross-assignment of error for review.
 II. A. First Assignment of Error
"The trial court erred in allocating full custody of the minor child of the parties to the father-appellee."
 {¶ 7} In her first assignment of error, Joan avers that the trial court erred when it granted Charles sole custody of their son, A.K. We disagree.
 {¶ 8} A trial court is vested with broad discretion to decide matters regarding the allocation of parental rights and responsibilities for the care of minor children. Donovan v. Donovan (1996), 110 Ohio App.3d 615,618. Therefore, a trial court's decision regarding child custody is subject to reversal only upon a showing of an abuse of discretion.Donovan v. Donovan, 110 Ohio App.3d at 618; Miller v. Miller (1988),37 Ohio St.3d 71, 74 (stating that the abuse of discretion standard applies to child custody cases). This is so because a trial court must have the discretion to do what is equitable based upon the particular facts and circumstances of each case. Booth v. Booth (1989),44 Ohio St.3d 142, 144, citing Cherry v. Cherry (1981), 66 Ohio St.2d 348,355. An abuse of discretion means more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Additionally, when applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, 67; Holcomb v. Holcomb
(1989), 44 Ohio St.3d 128, 131.
 {¶ 9} Moreover, the knowledge that a trial court gains through its observance of the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record; thus, a trial court is better equipped to examine and weigh the evidence in a custody case. Miller, 37 Ohio St.3d at 74, citing Trickey v. Trickey
(1952), 158 Ohio St. 9, 13. Therefore, an appellate court must be guided by the presumption that the findings of the trial court are correct. Inre Jane Doe 1 (1990), 57 Ohio St.3d 135, 138, citing Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80.
 {¶ 10} The "best interest of the child" is the overriding concern in any child custody case. Miller, 37 Ohio St.3d at 75; R.C. 3109.04(B)(1) and (C). R.C. 3109.04 states, in relevant part,
"(F)(1) In determining the best interest of a child * * * on an original decree allocating parental rights and responsibilities for the care of children * * *, the court shall consider all relevant factors,
including, but not limited to:
"(a) The wishes of the child's parents regarding the child's care;
"* * *
"(c) The child's interaction and interrelationship with the child's parents * * *;
"(d) The child's adjustment to the child's home, school, and community;
"(e) The mental and physical health of all persons involved in the situation; [and]
"(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights[.]" (Emphasis added.) R.C. 3109.04(F)(1).
 {¶ 11} Joan does not assert that the trial court did not make its custody determination in accordance with the R.C. 3109.04(F)(1) factors; rather, Joan simply discusses various facts from the record that she believes support her position. Nevertheless, we do note that in its judgment entry, the trial court did explicitly state that it considered the factors listed in R.C. 3109.04(F)(1).
 {¶ 12} The court also stated that it disapproved a shared parenting plan as suggested by Joan because it was not in A.K.'s best interest. In support of this conclusion, the court stated that Charles has been taking on an increasing responsibility for meeting A.K.'s daily schooling and home needs; that Charles has a regular and flexible schedule that can be adjusted to accommodate A.K.; that Joan's school schedule prevents her from being as available as Charles can be to parent A.K.; that Joan's testimony confirms that she is not exercising good judgment in her alcohol use; and that testimony from a reviewing doctor establishes that, while Joan has minimized her use of alcohol, she should stop drinking.
 {¶ 13} On direct examination, Joan stated that she and Charles were living together since the divorce proceedings commenced.[3] Joan also testified that she and Charles had agreed that during the marriage she would not work outside the home and instead be a "stay-at-home mom[,]" and that during the marriage she also managed their household finances and "took care of the checkbook[.]" Joan testified that she was presently unemployed and was a full-time student at the University of Akron, which she was scheduled to finish in May 2004. Joan also testified that after she finishes this first degree, she intends to get her master's degree right away. Joan testified that she maintained a 3.7 grade point average and had received several honors and awards.
 {¶ 14} Joan also noted that she had established and continued to participate in a parenting network program, a support group designed for parents going back to school to get their children involved socially in their parents' school life. Joan did admit that a lot of her time lately was spent studying. Joan testified that she had decided to return to school because she was having difficulty in her marriage; particularly, she stated that Charles had been mentally and verbally "abusing" her. Additionally, Joan testified that she did have outstanding student loans valued at approximately $16,000.00.
 {¶ 15} As to Charles' involvement in A.K.'s life, Joan did concede that Charles plays an active role. Specifically, Joan admitted that Charles plays sports with A.K., helps him do his homework, and takes A.K. to all of his sporting events. Joan testified that she wanted Charles to become more involved in A.K.'s activities, but also complained about Charles' involvement, stating that it is "over kill." While Joan speaks of Charles "liv[ing] his life through" A.K. and feeding A.K. with negative thoughts, one cannot make much of such blanket assertions; Joan does not assert that Charles is a bad influence on A.K.
 {¶ 16} There was considerable discussion regarding the interference of Joan's studies with her ability to take A.K. to nearby sports practices in which he was enrolled. Joan did admit that for the past year, Charles had been more involved in helping A.K. with his school work, and that under her supervision A.K. had missed two homework assignments for which he received a "green slip" from school and which Joan and A.K. concealed from Charles. Joan further admitted that Charles has attended the parent-teacher conferences and all school events, and does so by interrupting his own workday.
 {¶ 17} Charles also testified that over the course of the year leading up to trial, he primarily took care of getting A.K. ready for school, as well as getting him ready for bed. He testified that he has no difficulty accommodating his work schedule to meet A.K.'s daily needs, and that he has been doing so already. Charles further testified that he has been making dinners more frequently, and that Joan has been doing so less regularly.
 {¶ 18} Regarding custody of A.K., Charles testified that he did not agree with the Family Court Services' ("FCS") recommendation of a shared parenting scheme. Charles explained, "Joan has a serious alcohol problem. That alcohol problem has led her to do things such as driving impaired, driving with [A.K.] after drinking, erratic behavior to say the least, a lack of interest in him." Charles also testified that although Joan did not have an alcohol problem when she returned to school to pursue an M.B.A. in 2000, her situation worsened after she returned to school in April 2000, and was further aggravated after the divorce action commenced. Charles noted that her drinking increased over time, and that at the time of trial Joan did "a considerable amount of drinking." Charles' testimony reflected that his experience living with Joan familiarized him with her behavior while drinking. Specifically, Charles noted that after the divorce proceedings commenced, he witnessed her at times when "she must have had a significant number of beers in her the way she walked, the way she carried herself, the way she holds her head, the way her eyes look, the smell[.]"
 {¶ 19} During examination, Joan admitted to drinking. In fact, Joan stated that she began to drink after she and Charles returned from a trip to Mexico in 2000, and that she began drinking due to Charles' treatment of her. Joan noted that since she discovered in November 2002 that Charles was seeking sole custody of A.K. due to her "alcohol problem[,]" she began to attend Alcoholics Anonymous ("AA") classes. Joan also testified regarding an incident that occurred after divorce proceedings began, when she drove A.K. and herself to a battered women's shelter after having drunk alcohol. When asked on cross-examination whether her use of alcohol on that day impaired her judgment concerning A.K., Joan conceded that counsel was correct, and that she "probably shouldn't have gotten into the car with him." Joan did state, however, that she does not feel the need to drink when she is away from Charles. On cross-examination, Charles' counsel inquired into the details of Joan's alcohol "abuse." Joan admitted that she has drunk 12 to 14 beers in one sitting.
 {¶ 20} Counsel cross-examined Joan regarding a number of incidents of her drinking during the day, some of which occurred while she was entrusted with watching A.K. Joan conceded that her drinking occurred "fairly regular[ly]." Joan testified that she had explained to Candace Derry ("Derry"), from the Summit County Court of Common Pleas, Domestic Relations Division, that she "self[-]medicated with alcohol[,]" and that this was her "coping mechanism." Joan even noted that during one incident when she had called the police to their home because of a domestic dispute, she admitted to the police that she had drunk 12 to 14 beers; she also had admitted that she had consumed these beers in front of A.K.
 {¶ 21} In a letter to Joan's counsel dated February 11, 2003, an Edwin Shaw Hospital assessment counselor noted that pursuant to Joan's assessment, she was diagnosed with chemical dependency. Furthermore, the letter indicated that Edwin Shaw Hospital had recommended her for their intensive outpatient chemical dependency treatment program, but that Joan declined to do so as she felt that attending AA meetings was sufficient.
 {¶ 22} Dr. Robert Liebelt testified regarding the assessment that he performed on Joan at Saint Thomas Hospital and the two times that he met with Joan. In a letter to Derry from the common pleas court, Dr. Liebelt did note that his clinical impression of Joan was that she experienced "episodic" alcohol abuse. Dr. Liebelt testified that Joan had informed him during their meeting that she was attending AA meetings at that time, but that she had not informed him of her assessment performed at Edwin Shaw Hospital. Dr. Liebelt also testified that he was not made aware of the facts that she had drunk after January 2003, that Joan had driven her son to a shelter after drinking, and that she had hidden beer cans. Dr. Liebelt noted that if he had been made aware of these instances, this information would have affected his evaluation of Joan. Dr. Liebelt did testify that he was "impressed with her outgoing attitude[.]" However, when asked whether he observed anything that would interfere with Joan's parenting skills, Dr. Liebelt ultimately answered that he "only met with her on two occasions[,]" and that he "just wouldn't know."
 {¶ 23} Joan was also questioned regarding another alcohol assessment performed at Saint Thomas Hospital with Dr. Liebelt. Joan admitted that she had told Dr. Liebelt that she had stopped drinking in January and February 2003, but that she had in fact drunk "[m]aybe six or seven [cans of beer]" in January 2003. Joan also admitted that she had hidden beer cans in the trunk of her car.
 {¶ 24} We commend Joan's school performance and involvement, and sympathize with any unpleasant circumstances that she may have been subjected to during the marriage. However, in viewing the totality of the circumstances, we find that the trial court's conclusion, that shared parenting was not in the best interest of A.K., was proper. See R.C.3109.04(F). Because we cannot say that this decision was arbitrary, unreasonable, or unconscionable, we find that the trial court did not abuse its discretion in granting custody of A.K. to Charles. SeeBlakemore, 5 Ohio St.3d at 219. Accordingly, Joan's first assignment of error is overruled.
 B. Second Assignment of Error
"The trial court erred in determining spousal support."
 {¶ 25} In her second assignment of error, Joan avers that the trial court erred in its determination of the spousal support amount. Specifically Joan contends that the trial court attributed the wrong income amount to Charles in its computation of spousal support. Joan's averments lack merit.
 {¶ 26} An appellate court reviews a spousal support award under an abuse of discretion standard. Schindler v. Schindler (Jan. 28, 1998), 9th Dist. No. 18243. See, also, Blakemore, 5 Ohio St.3d at 219. A trial court has broad discretion in awarding spousal support; however, such a determination is controlled by the factors in R.C. 3105.18(C)(1). Abramv. Abram, 9th Dist. No. 3233-M, 2002-Ohio-78. As long as the record reflects that the trial court considered the factors in R.C. 3105.18(C)(1), the award for spousal support will be upheld. Peters v. Peters, 9th Dist. Nos. 03CA008306 and 03CA008307, 2004-Ohio-2517, at ¶ 11, citingFisher v. Fisher, 3rd Dist. No. 7-01-12, 2002-Ohio-1297. With respect to a trial court's findings for spousal support, an appellate court gives deference to these findings when they are supported by some competent, credible evidence in the record. Carruth v. Carruth (Jan. 27, 1999), 9th Dist. No. 2761-M, citing Getter v. Getter (1993), 90 Ohio App.3d 1, 8-9.
 {¶ 27} In support of her second assignment of error, Joan does not argue that the trial court failed to take into account the factors enumerated in R.C. 3105.18(C)(1). Rather, Joan only contests the trial court's factual findings regarding Charles' income. Joan asserts that the trial court's findings, that Charles' income in the year 2002 was $141,149.00, and that his income in 2003 was $143,000.00, is "somewhat problematic[.]" Joan also claims, referring to Charles' income tax returns, that Charles' income in the year 2000 was in excess of $229,533.00. Joan appears to make the argument, that, based on the income figures presented, the trial court should have concluded that Charles' average gross income is $172,000.00. Joan also asserts that the trial court's income determinations do not correspond with actual earnings realized by Charles.
 {¶ 28} Charles' affidavit of income, expenses, and property lists the following income amounts: for the year 2000, $135,000 in income, plus $5,000.00 in overtime, commission, or bonuses; for the year 2001, $135,000.00 in income, plus $5,000.00 in overtime, commission, or bonuses; and for the year 2002, $140,000.00 in income. Charles' testimony at trial corroborates these figures. Joan substantiates her claim about Charles' 2000 income solely with a reference to a year 2000 income tax return. However, upon a review of the record, we do not find a copy of a 2000 tax return in the record before the trial court. An appellate court's review on appeal is limited to those materials in the record before the trial court. Yun v. Yun, 5th Dist. No. 2002CA00353, 2003-Ohio-2644, at ¶ 33. See, generally, Molnar v. Molnar (June 20, 2001), 9th Dist. No. 3102-M.
 {¶ 29} Furthermore, Joan does not point to any other evidence, or citations to applicable authorities, to support her arguments. An appellant bears the burden of affirmatively demonstrating the error on appeal and substantiating his or her arguments in support. Angle v. W.Res. Mut. Ins. Co. (Sept. 16, 1998), 9th Dist. No. 2729-M; Frecska v.Frecska (Oct. 1, 1997), 9th Dist. No. 96CA0086. See, also, App.R. 16(A)(7) and Loc.R. 7(A)(6). Furthermore, Loc.R. 7(E) specifically provides that "[r]eferences to the pertinent parts of the record shall be included in the * * * argument section of the brief. If a party fails to include a reference to a part of the record that is necessary to the court's review, the court may disregard the assignment of error or argument." Moreover, "[i]f an argument exists that can support this assignment of error, it is not this [C]ourt's duty to root it out."Cardone v. Cardone (May 6, 1998), 9th Dist. Nos. 18349 and 18673.
 {¶ 30} Based upon the foregoing, we find that the trial court's factual determinations with respect to Charles' income are supported by some competent, credible evidence in the record. See Carruth, supra;Getter, 90 Ohio App.3d at 9. Accordingly, Joan's second assignment of error is overruled.
 C. Third Assignment of Error
"The trial court erred in allowing into evidence a private, confidential and privileged assessment voluntarily undertaken by the appellant."
 {¶ 31} In her third assignment of error, Joan avers that the trial court erred when it admitted into evidence the Edwin Shaw Hospital alcohol assessment. Joan contends that this report contains highly confidential and private information that she claims would have probably not been disclosed otherwise during the proceedings before the trial court. Joan's contentions lack merit.
 {¶ 32} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage (1987),31 Ohio St.3d 173, paragraph two of the syllabus. Absent an abuse of discretion, a reviewing court must affirm a trial court's disposition of discovery issues. State ex rel. The V Cos. v. Marshall, 81 Ohio St.3d 467,469, 1998-Ohio-329. An abuse of discretion is more than an error of judgment, but instead connotes "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd.,66 Ohio St.3d 619, 621, 1993-Ohio-122. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
 {¶ 33} In the instant case, Joan's counsel filed a motion in limine to preclude the use of this assessment at trial. During the proceedings at trial, the trial court entertained arguments regarding the motion in limine that Joan's counsel had filed regarding the admission of the Edwin Shaw assessment. Joan's counsel argued during the proceedings that this assessment was work product, that this assessment is only admissible into the FCS file, and that Joan's counsel had not yet had an opportunity to see the evaluation until the morning the trial proceedings commenced. The court overruled the motion, and, noting that a records custodian from Edwin Shaw Hospital was present at trial,[4] ordered the production of these records. Furthermore, the court expressly noted that "[the court] sent her [to Edwin Shaw Hospital] as a result of [FCS]."
 {¶ 34} Joan argues that the Edwin Shaw Hospital assessment should have been excluded because it was not court-ordered. However, the record indicates to the contrary. In fact, Joan even admits that the assessment at Edwin Shaw was performed pursuant to a FCS referral for counseling or for evaluation. During cross-examination, Joan testified that she was referred for an evaluation pursuant to the custody challenge in this case. She testified that, per the advice of her attorney, she chose to have this assessment performed at Edwin Shaw Hospital. Joan further testified that she had not agreed with the series of recommendations that Edwin Shaw made, namely, that she attend outpatient substance abuse counseling three to four times per week. Joan stated that she believed the staff member at Edwin Shaw was a "nut case[,]" and that she was "very unprofessional." Joan stated that she then chose to go to Saint Thomas Hospital for a second assessment. Joan admitted that when she went back to FCS and was asked about her visit to Edwin Shaw, she denied having gone there, and admitted to lying about the fact.
 {¶ 35} Joan also claims that confidential information contained in this report was improperly revealed during trial. Specifically, Joan states that this record should not have been admitted because of its reference to her past use of drugs. During cross-examination, Charles' counsel inquired into Joan's past drug use. Specifically, counsel asked Joan whether she had told the staff at Edwin Shaw Hospital that she had used PCP, or angel dust, when she was a teenager; Joan answered that she had. While she denied that she had told Edwin Shaw that she experimented with other drugs noted, she did state that she had possibly used mescaline sometime in the seventh, eighth, or ninth grade. A review of this testimony shows that counsel inquired into this past drug use independently of the Edwin Shaw Hospital report; that is, information about Joan's past use of other drug substances was directly derived by Charles' counsel by an independent inquiry on cross-examination, and not by the admission of the Edwin Shaw Hospital report into evidence.
 {¶ 36} Furthermore, Joan answered these questions voluntarily during the proceedings, and at no point during this line of questioning did her counsel raise any objection. Generally, errors that arise during the course of proceedings and which are not brought to the attention of the trial court by objection, or otherwise, at the time they could be remedied, are waived and may not be reviewed on appeal. See LeFort v.Century 21-Maitland Realty Co. (1987), 32 Ohio St.3d 121, 123. In sum, the mention of these topics in the assessment itself was ultimately irrelevant and cumulative of information independently derived from examination of Joan herself.[5]
 {¶ 37} Additionally, Joan now raises the arguments that this Edwin Shaw Hospital assessment is a privileged communication pursuant to R.C.4732.19 and an expert report pursuant to R.C. 2317.36. She also raises an argument with respect to the right to privacy regarding patients' records. Our review of the materials in the record before us indicates that Joan did not make these specific arguments before the trial court.[6] "Issues not raised and tried in the trial court cannot be raised for the first time on appeal." Holman v. Grandview Hosp. Med.Ctr. (1987), 37 Ohio App.3d 151, 157. Joan's failure to raise these issues before the trial court operates as a waiver of her right to assert them for the first time on appeal. See Hypabyssal, Ltd. v. City of AkronHous. Appeals Bd. (Nov. 22, 2000), 9th Dist. No. 20000, citing State exrel. Zollner v. Indus. Comm. (1993), 66 Ohio St.3d 276, 278. Therefore, we decline to address these specific issues.
 {¶ 38} In light of the aforementioned, we cannot say that the trial court abused its discretion in admitting the Edwin Shaw Hospital assessment. See Sage, 131 Ohio St.3d 173 at paragraph two of the syllabus; State ex rel. The V Cos., 81 Ohio St.3d at 469; Pons,66 Ohio St.3d at 621. Accordingly, Joan's third assignment of error is overruled.
 D. Fourth Assignment of Error
"The trial court erred in alowing counsel for father-appellee to badger and/or otherwise inpugn the integrity and character of the appellant."
 {¶ 39} In her fourth assignment of error, Joan avers that the trial court erred when it allowed Charles' counsel to question her veracity during cross-examination, and to also inquire into the details of her alcohol abuse. We disagree.
 {¶ 40} A trial court possesses broad discretion in controlling the scope of cross-examination, and the court's ruling will not be reversed unless there is an abuse of discretion. In re Verba (Sept. 26, 1990), 9th Dist. No. 14529, citing O'Brien v. Angley (1980), 63 Ohio St.2d 159,163. The character and extent of cross-examination regarding an appropriate subject matter is within the sound discretion of the trial court. State v. Kish, 9th Dist. No. 02CA008146, 2003-Ohio-2426, at ¶ 12, citing State v. Green (1993), 66 Ohio St.3d 141, 147. An appellate court may not interfere with a trial court's decision absent an abuse of discretion. Kish at ¶ 12, citing State v. Younker, 2nd Dist. No. 02CA1581, 2002-Ohio-5376, at ¶ 9. An abuse of discretion connotes more than an error judgment, but instead demonstrates an arbitrary, unreasonable, or unconscionable decision. Schafer v. Schafer (1996),115 Ohio App.3d 639, 642.
 {¶ 41} In Ohio, the scope of cross-examination is not limited to matters raised during direct examination; however, the cross-examination must nevertheless comply with the restrictions set forth in the rules of evidence. See State v. Taylor (Feb. 9, 1999), 9th Dist. No. 2783-M. See, also, Evid.R. 611. Evid.R. 611 governs the interrogation and presentation of witnesses. This rule provides that the trial court is to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence[.]" Evid.R. 611(A). Furthermore, the rule provides that the scope of cross-examination encompasses "all relevant matters and matters affecting credibility." Evid.R. 611(B). A witness may be properly cross-examined with respect to relevant facts developed in the case-in-chief, as well as other relevant facts which the party calling the witness could have asked in order to advance his or her case.Taylor, supra.
 {¶ 42} In the instant case, Joan argues that it was improper for the court to allow opposing counsel to cross-examine her for a lengthy period of time with respect to her alcohol abuse. However, consideration of Joan's abuse of alcohol was clearly relevant to the trial court's determination in this case. The issue of Joan's drinking problem was raised during her direct examination, and opposing counsel explained to the court that his cross-examination on this subject matter was important because it went to Joan's credibility and issue of parenting. Counsel further explained that Joan had denied and minimized the severity of her drinking problem, and that the extent of cross-examination on this topic was necessary for this reason. Furthermore, our review of the transcript of the trial proceedings reveals, and Joan even admits in her brief on appeal, that the trial court did urge opposing counsel to proceed with questioning by expressly suggesting to counsel to "move on."
 {¶ 43} Moreover, we note that Joan supports her contentions with citations to authorities that deal with the taking of depositions, which is not applicable to the instant case. As noted above, an appellant bears the burden of affirmatively demonstrating the error on appeal, and substantiating his or her arguments in support. Angle, supra; Frecska,
supra. See, also, App.R. 16(A)(7) and Loc.R. 7(A)(6). Joan has failed to meet her burden on appeal in this respect.
 {¶ 44} In light of the foregoing, we cannot say that the trial court abused its discretion in regulating the flow of the cross examination of Joan. See In re Verba, supra; O'Brien, 63 Ohio St.2d at 163. Accordingly, Joan's fourth assignment of error is overruled.
 E. Cross-Assignment of Error
"The court erred in not allocating premarital property to appellee and determining that property acquired prior to marriage was marital."
 {¶ 45} In his sole cross-assignment of error, Charles contends that the trial court erred in its determination of marital property. We agree.
 {¶ 46} Before it begins to divide the property in divorce proceedings, the trial court must classify the various items of property as either marital or separate. R.C. 3105.171(B). Under R.C. 3105.171(A)(3), "marital property" is defined as property that is acquired by the parties during the marriage. "`Marital property' does not include any separate property," R.C. 3105.171(A)(3)(b), and R.C. 3105.171(A)(6)(a) provides that "separate property" is any property that was acquired by one spouse before the date of the marriage.
 {¶ 47} While Charles does not expressly challenge the trial court's determination of the duration of the marriage in this case, this issue is nevertheless central to his challenge of the classification of the Rally's stock. "During the marriage" is defined as "the period of time from the date of the marriage through the date of the final hearing in an action for divorce[.]" R.C. 3105.171(A)(2)(a). See Flick v. Flick, 12th Dist. No. CA2001-05-111, 2001-Ohio-8673 (stating that R.C.3105.171(A)(2)(a) sets forth a "statutory presumption that the duration of a marriage runs from the date of the ceremonial marriage through the date of the final divorce hearing"). However, R.C. 3105.171 allows alternate dates to be employed, if the trial court finds that use of the date prescribed in R.C. 3105.171(A)(2)(a) would be inequitable. R.C.3105.171(A)(2)(b); Schrader v. Schrader (Jan. 21, 1998), 9th Dist. No. 2664-M. The choice of dates for the purposes of equitable distribution of property is to be "`dictated largely by pragmatic considerations.'"Schrader, supra, quoting Berish v. Berish (1982), 69 Ohio St.2d 318,319. Accordingly, the decision to use different dates for the determination of the duration of a marriage is a discretionary matter, but will be reversed if it is unreasonable, arbitrary, or unconscionable. Schrader, supra, citing Schneider v. Schneider (1996),110 Ohio App.3d 487, 492; Bianco v. Bianco (Aug. 27, 1999), 11th Dist. No. 97-T-0226; Hoover v. Hoover (Dec. 18, 1998), 6th Dist. No. WM-97-031.
 {¶ 48} In August 1991, Charles received a grant of stock options valued at $30,000.00, which Charles could not exercise for six months. Charles first exercised 7,500 of these stock options in the summer of 1992. Charles stated that he paid $37,500.00 for exercising these stock options, and that he turned around and sold them for approximately $155,000.00. Charles testified that he sold these stock options and applied a significant portion of this amount to pay for Joan's wedding ring and their wedding. During cross-examination, Joan also conceded that the house in Louisville was purchased with Charles' money as a down payment from Rally's stock, and that she did not contribute any premarital money for the payment of the house.
 {¶ 49} In its judgment entry, the trial court found that Joan and Charles were married on October 10, 1992. Additionally, the court found that the parties lived together for more than one year prior to marriage, and that the down payment on the home purchased by the parties, which occurred before marriage, came from the exercise of Rally's stock options. The court further found that "[t]he stock options were obtained by [Charles] when the parties were living together and the proceeds from the stock options exercised during the marriage are determined by the Court to be a marital asset."
 {¶ 50} In its conclusions of law, the court concluded, pursuant to R.C. 3105.171(A)(2)(b) and (G), that "[b]ecause it would be inequitable to divide the property from the date of the marriage to the final hearing, the period of time `during the marriage' was from July 1, 1991, through July 24, 2003." However, in making this determination, the trial court did not set forth any reasons why equity required that the parties' marriage be deemed commenced from the time that they lived together. SeeHoover, supra.
 {¶ 51} We cannot say, based upon our review of the record in this case, that the trial court's determination on this matter was proper. Thus, we must conclude that the trial court abused its discretion in determining that the parties' marriage commenced, for the purposes of its determination of marital property in the divorce proceedings, during the time that the parties lived together prior to marriage. See Schrader,
supra, citing Schneider, 110 Ohio App.3d at 492; Bianco, supra; Hoover,
supra. Accordingly, Charles' sole assignment of error is well taken.
 III. {¶ 52} Joan's first, second, third, and fourth assignments of error are overruled. Charles' sole cross-assignment of error is sustained. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to the parties equally.
Exceptions.
Whitmore, P.J., Baird, J. concur.
[1] Joan and Charles were residents of Ohio for at least six months, and residents of Summit County for 90 days, prior to the filing of this complaint.
[2] While the transcript of the docket and journal entries in the trial court does not reflect that a motion in limine was actually filed, neither party in this case challenges that such a filing actually occurred, and both parties note this in the recitation of their facts in their respective briefs on appeal.
[3] Joan testified that this was so because a temporary motion to vacate the residence had been denied by the court.
[4] A subpoena had been served on Edwin Shaw Hospital regarding these records.
[5] Joan also states that certain information in the assessment was referred to during cross-examination to indicate that she had made inconsistent representations to an FCS investigator. However, the questioning of a witness' credibility is appropriate on cross-examination. See Evid.R. 611(B).
[6] As noted above, a copy of this motion in limine, while purportedly filed with the trial court, does not appear on the transcript of docket and journal entries or in the transcript itself.