DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Gary Ray Moore, appeals from the judgment of the Summit County Court of Common Pleas. This Court affirms.
 I. {¶ 2} Appellant was employed by Appellees, Comparison Market, Inc., et al., as an inside sales representative who sold automobile insurance policies. Appellant was employed by Appellees from February 23, 2004 until he was discharged on April 4, 2005. Upon his discharge, Appellant filed a claim with the Ohio Department of Job and Family Services ("ODJFS") seeking unemployment benefits. On April 25, 2005, the ODJFS denied Appellant's claim on the ground that he was discharged for just cause in connection with his work. Upon Appellant's appeal, the ODJFS issued a redetermination decision in which it affirmed its initial determination.
 {¶ 3} Appellant appealed this decision and the ODJFS transferred jurisdiction to the Unemployment Compensation Review Commission ("Review Commission"). The Review Commission assigned the case to a hearing officer who held a hearing by telephone on September 30, 2005. On October 17, 2005, the hearing officer affirmed the ODJFS's decision denying Appellant unemployment benefits because he was terminated for just cause. Appellant then filed a request that the Review Commission review the hearing officer's decision. The Review Commission declined the request.
 {¶ 4} Appellant then appealed the Review Commission's decision to the Summit County Court of Common Pleas. On May 18, 2006, the trial court affirmed the decision of the Review Commission. Appellant filed a timely appeal from the trial court's May 18, 2006 decision, raising one assignment of error for our review.
 II. APPELLANT'S ASSIGNMENT OF ERROR "DENIAL OF UNEMPLOYMENT BENEFITS IN THIS CASE WAS AGAINST THE MANIFEST WEIGHT OF [THE] EVIDENCE IN VIOLATION OF ARTICLE IV, SECTION 3 OF THE OHIO CONSTITUTION. THE TRIAL COURT ERRED IN DENYING [APPELLANT] DUE PROCESS."
 {¶ 5} In Appellant's sole assignment of error he presents two arguments. First, he contends that the denial of his application for unemployment benefits was against the manifest weight of the evidence. Second, he argues that the trial court erred in denying him due process. We find no merit in either contention.
Standard of Review
 {¶ 6} R.C. Chapter 4141 does not distinguish between the scope of review of a common pleas court and that of an appellate court with respect to Review Commission decisions. See R.C. 4141.282(H)-(I). Additionally, the Supreme Court of Ohio has confirmed that "there is no distinction between the scope of review of common pleas and appellate courts regarding `just cause' determinations under the unemployment compensation law." See Durgan v. Ohio Bur. of Emp. Servs. (1996),110 Ohio App.3d 545, 551, citing Tzangas v. Administrator, Ohio Bur. of Emp.Servs. (1995), 73 Ohio St.3d 694, 696-97.
 {¶ 7} Thus, in a review of a decision by the Review Commission regarding eligibility for unemployment compensation benefits, an appellate court is bound by the same limited scope of review as the common pleas courts. Irvine v. State of Ohio, Unemp. Comp. Bd. ofRev. (1985), 19 Ohio St.3d 15, 18. Therefore, an appellate court may only reverse an unemployment compensation eligibility decision by the Review Commission if the decision is unlawful, unreasonable, or against the manifest weight of the evidence. Tzangas, 73 Ohio St.3d at 696. Additionally, it is important to keep in mind the limitation on an appellate court's assessment of a Review Commission decision, which precludes the court from making factual findings or weighing the credibility of witnesses. Tzangas, 73 Ohio St.3d at 696, citingIrvine, 19 Ohio St.3d at 18.
 {¶ 8} This Court is required to focus on the decision of the Review Commission, rather than that of the common pleas court, in unemployment compensation cases. Barilla v. Ohio Dept. of Job Family Servs., 9th Dist. No. 02CA008012, 2002-Ohio-5425, at ¶ 6, citing Tenny v. OberlinCollege (Dec. 27, 2000), 9th Dist. No. 00CA007661, at *1. "Every reasonable presumption must be made in favor of the [decision] and the findings of facts [of the Review Commission]." Karches v.Cincinnati (1988), 38 Ohio St.3d 12, 19; see, also, Long v. Hurles
(1996), 113 Ohio App.3d 228, 233 (stating that the appellate court is to begin with the presumption that the trial court's findings of fact are correct). "[I]f the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment." Karches, 38 Ohio St.3d at 19.
 {¶ 9} The resolution of factual questions is chiefly within the Review Commission's scope of review. Tzangas, 73 Ohio St.3d at 696;Irvine, 19 Ohio St.3d at 17. The courts' role is to determine whether the decision of the Review Commission is supported by evidence in the certified record. Durgan, 110 Ohio App.3d at 551, citingTzangas, 73 Ohio St.3d at 696; Irvine, 19 Ohio St.3d at 18, citingKilgore v. Bd. of Rev. (1965), 2 Ohio App.2d 69, 71. If the reviewing court finds that such support is found, then the court cannot substitute its judgment for that of the Review Commission. Durgan,110 Ohio App.3d at 551, citing Wilson v. Unemp. Comp. Bd. of Rev. (1984),14 Ohio App.3d 309, 310. Furthermore, the Supreme Court has noted that applying the same standard of review at both the common pleas and appellate court levels does not result in a de novo review standard. Tzangas,73 Ohio St.3d at 697. "The fact that reasonable minds might reach different conclusions is not a basis for the reversal of the [Review Commission's] decision." Irvine, 19 Ohio St.3d at 18, citing Craig v. Bur. of Unemp.Comp. (1948), 83 Ohio App. 247, 260.
 {¶ 10} Appellant's application for unemployment benefits was denied on the ground that he was discharged for "just cause" as provided in R.C.4141.29(D)(2)(a). Under R.C. 4141.29, a party is entitled to unemployment compensation benefits if he or she quits with just cause or is discharged without just cause. See R.C. 4141.29(A) and (D)(2)(a);Bacalu v. Lorantffy Care Ctr. (Feb. 11, 1998), 9th Dist No. 18427, at *2. A claimant bears the burden to prove that he or she is entitled to unemployment compensation benefits under R.C. 4141.29, "including the existence of just cause for quitting work." Irvine, 19 Ohio St.3d at 17, citing Shannon v. Bur. of Unemp. Comp. (1951), 155 Ohio St. 53, 59. The determination of what constitutes "just cause" within the context of unemployment compensation "necessarily depends upon the unique factual considerations of the particular case" and involves a concurrent analysis of the legislative purpose of the Unemployment Compensation Act, R.C. 4141.01 — 4141.47 and 4141.99. Irvine, 19 Ohio St.3d at 17. Ohio courts have long recognized that the purpose of the Act is "`to provide financial assistance to an individual who had worked, was able and willing to work, but was temporarily without employment through no faultor agreement of his own.'" (Emphasis added.) Id., quoting Salzl v.Gibson Greeting Cards, Inc. (1980), 61 Ohio St.2d 35, 39.
 {¶ 11} Traditionally, "just cause," in the statutory sense, means "`that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act.'" Irvine,19 Ohio St.3d at 17, quoting Peyton v. Sun T.V. Appliances (1975),44 Ohio App.2d 10, 12. See, also, Durgan, 110 Ohio App.3d at 549, quotingTzangas, 73 Ohio St.3d at 697. Additionally, "just cause" for quitting one's job amounts to what "`an ordinarily intelligent person' would find to be `a justifiable reason for quitting, where that cause is related in a substantial way with a person's ability to perform in his employment[.]'" Bacalu, supra, quoting Henize v. Giles (1990),69 Ohio App.3d 104, 111. We observe that the inquiry into just cause is a factual one, which reviewing courts are precluded from making in these administrative appeals. Durgan, 110 Ohio App.3d at 551, citingIrvine, 19 Ohio St.3d at 17.
Manifest Weight of the Evidence
 {¶ 12} In the instant case, Appellant requests that this Court review both the common pleas court's decision and the Review Commission's decision. In light of the standard of review delineated above, however, we are required to address Appellant's assignment of error through a review of the Review Commission's decision. See Barilla at ¶ 6, citingTenny, supra. Therefore, we now proceed to determine whether the decision of the Review Commission in the instant case is supported by evidence in the certified record, and whether the decision is unlawful, unreasonable, or against the manifest weight of the evidence. SeeDurgan, 110 Ohio App.3d at 551, citing Tzangas, 73 Ohio St.3d at 696; R.C. 4141.282(H).
 {¶ 13} Three people testified at the September 30, 2005 hearing: Susan Pringle, Vanessa Sowell and Appellant. At the outset, we must address Appellant's argument that the hearing officer erred in considering hearsay testimony. Ohio case law dictates that the Review Commission is permitted to consider hearsay testimony in making unemployment compensation decisions. See Simon v. Lake Geauga Printing Co. (1982),69 Ohio St.2d 41, 44; R.C. 4141.281(C)(2) ("Hearing officers are not bound by common law or statutory rules of evidence or by technical or formal rules of procedure"). Therefore, we find no error in the hearing officer's consideration of hearsay testimony.
 {¶ 14} Ms. Pringle, Appellees' human resource manager, testified as follows. During Appellant's employment with Appellees, he consistently expressed that he did not want to receive any critiques of his work performance. In June of 2004, after completing his initial job training, Appellant complained that he did not want his supervisor to evaluate his work. On another occasion, Appellant informed the human resource director that he would not follow his supervisor's break schedule because he smoked and would, instead, leave to smoke when he so desired.
 {¶ 15} Mike McLaughlin was employed as Appellant's supervisor. On January 15, 2005, Appellant had an altercation with Mr. McLaughlin when Mr. McLaughlin was working as a "Saturday supervisor." That day, Mr. McLaughlin asked the agents to work through half of their lunch for overtime pay and to limit themselves to one fifteen-minute break. Despite this request, Appellant left his desk on at least one occasion when he was not scheduled for a break and when no other agents were available. Mr. McLaughlin noticed Appellant's absence and sent him an e-mail, asking him to maintain the day's schedule. Appellant responded with an e-mail message stating, "[s]urely you have something better to do than to watch me all day. Stop wasting my time with these stupid e-mails, unlike you, I have work to do."
 {¶ 16} On January 17, 2005, Ms. Pringle approached Appellant about this interaction with Mr. McLaughlin. Later on that same day, Appellant called out to Mr. McLaughlin, twice stating that Mr. McLaughlin was a "zero". As a result of Appellant's conduct, he received a written warning on February 5, 2005. The written warning informed Appellant that any additional violations may lead to his termination. Appellant had also received a written warning in February of 2004. Ms. Pringle did not explain the impetus for the February 2004 written warning.
 {¶ 17} On March 26, 2005, Appellant left his desk for an unscheduled smoke break. Appellant's supervisor reprimanded him.[1] In response, Appellant stated that he had been working with his manager about his adherence to the schedule and that he would take care of it.
 {¶ 18} Appellees' human resource director, Vanessa Sowell, testified as follows. On April 4, 2005, Appellant vehemently complained about the company to Appellees' marketing director. The marketing director then notified the human resource department about Appellant's complaints. When Ms. Sowell confronted Appellant about his comments, he yelled at her. She then asked him whether he thought he could follow the company's rules and regulations that were required to successfully perform his job. Appellant told her that he refused to follow the company's rules and regulations. Later that day, Appellant apologized to Ms. Sowell for raising his voice at her. That same day, Appellees discharged Appellant.
 {¶ 19} Appellant's testimony mirrors his arguments on appeal. Therefore, we will address his arguments as they invoke the most significant portions of his testimony. Appellant contends that Appellees repeatedly admitted that there was no reason for his termination. The evidence in the record contradicts this contention. Ms. Sowell testified that Appellant's actions on April 4, 2005, when taken alone, would not have warranted discharge. She went on to explain that his discharge was based on "a pattern of continuous * * * concern regarding the same types of things and an unwillingness on [Appellant's] part to assist us in helping him with meeting our business rules and regulations." The record is replete with testimony regarding Appellant's insubordinate and inappropriate conduct.
 {¶ 20} Appellant admits that he called his supervisor "zero," but contends that Appellees had no policy forbidding the use of nicknames. No matter whether Appellees had a company policy prohibiting nicknames, we find this conduct disrespectful and inappropriate in the workplace.
 {¶ 21} While Appellant testified that he often took unscheduled breaks, he asserts that his regular supervisor allowed him to take smoking breaks at his discretion. The record reflects that Appellant was under the authority of a different supervisor on the day in question. He was, therefore, obligated to follow that supervisor's directive. His failure to do so constitutes an act of insubordination.
 {¶ 22} Appellant admits that he declined to follow Mr. McLaughlin's advice with regard to a particular sales call and that he told Ms. Pringle that he did not want Mr. McLaughlin to evaluate him. Appellant further acknowledged that on April 4, 2005 he told Ms. Sowell that he could not follow the company's rules. However, he contends that Mr. McLaughlin's advice violated the "golden rule" and that he could not, therefore, morally follow the directive. Appellant also adamantly denies Appellees' claims that (1) the January 15, 2005 e-mail he sent to his supervisor contained profane or threatening language and (2) he raised his voice at Ms. Sowell in their April 4, 2005 discussion.
 {¶ 23} Clearly, Appellant challenges the Review Commission's findings of fact. However, the resolution of credibility and factual questions are chiefly the Review Commission's responsibility. Tzangas,73 Ohio St.3d at 696; Irvine, 19 Ohio St.3d at 17. Consequently, when reviewing a decision of the Review Commission, we are precluded from making factual findings. Id. "[I]f the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment." Karches, 38 Ohio St.3d at 19. Here, the Review Commission found Appellees' evidence more credible than Appellant's. We must, therefore, interpret the facts as demonstrating Appellant's insubordination, as this construction is consistent with the Review Commission's decision.
 {¶ 24} The within matter involved repeated inappropriate conduct. Appellant did not alter his conduct after the written warning. Furthermore, Appellant specifically stated that he would not follow the company's policies. Ohio appellate courts "have consistently upheld the discipline of insubordinate employees for their refusal to comply with the proper requests of a superior." Jenkins v. Scioto Cty. Bd. of Cty.Commrs. (Mar. 15. 1996), 4th Dist. No. 95CA2372, at *3 (upholding the appellant's termination where she committed several acts of insubordination). In Gerstenberger v. Macedonia (1994),97 Ohio App.3d 167, 174, this Court upheld the removal of a city fire chief after he twice refused to obey the mayor's order to reinstate a firefighter/paramedic to her former position. See Guy v.Steubenville (2002), 147 Ohio App.3d 142, 150 (finding that City had just cause to dismiss police officer for insubordination where the officer refused to consent to release of information from mandatory counseling session established by consent decree that was intended to correct police corruption, and thus, officer was not entitled to unemployment compensation).
 {¶ 25} Moreover, a few of Appellant's acts of misconduct taken alone could potentially satisfy just cause as even a single incident of misconduct can create just cause for termination. See Gualtieri v.Stouffer Foods Corp., et al. (Mar. 24, 1999), 9th Dist. No. 19113, at *3 ("R.C. 4141.29(D)(2)(a) does not require more than one incident of misconduct to establish just cause"). When taken together, Appellant's actions create more than sufficient just cause for his discharge.
 {¶ 26} Based upon a thorough examination of the record and the foregoing analysis, we find that the Review Commission's finding that Appellant was terminated for just cause from his employment with Appellees and that unemployment compensation was properly disallowed is supported by the evidence in the certified record. See Durgan,110 Ohio App.3d at 551. Furthermore, we cannot say that the Review Commission created such a manifest miscarriage of justice that the decision must be reversed. See Thompkins, 78 Ohio St.3d at 387. Accordingly, this Court finds that the Review Commission's decision that Appellant was terminated with just cause is not against the manifest weight of the evidence, and is also not unlawful or unreasonable. See R.C.4141.282(H).
Due Process
 {¶ 27} Appellant's due process argument involves his contention that R.C. 4141.282 deprives him of due process by prescribing a limited scope of appellate review of Review Commission decisions. Appellant fails to provide any support for this contention.
 {¶ 28} An appellant bears the burden of affirmatively demonstrating the error on appeal and substantiating the arguments in support. App.R. 16(A)(7); Loc.R. 7(A)(7). See Figley v. Heather Corp, 9th Dist. No. 04CA0054, 2005-Ohio-2566, at ¶ 8. It is not the duty of this Court to develop an argument in support of an assignment of error, even if one exists. State v. Tanner, 9th Dist. No. 04CA0062-M, 2005-Ohio-998, at ¶ 24; Prince v. Jordan, 9th Dist. No. 04CA008423, 2004-Ohio-7184, at ¶ 40; Klausman v. Klausman, 9th Dist. No. 21718, 2004-Ohio-3410
at ¶ 29. Appellant's assertion is insufficient to meet his burden of establishing error. Therefore, we decline to further address it.
 {¶ 29} Because this Court has found that the decision of the Review Commission is supported by the evidence and is not unlawful, unreasonable, or against the manifest weight of the evidence, we must affirm the Review Commission's decision that Appellant was discharged with just cause. See R.C. 4141.282(H). Accordingly, Appellant's sole assignment of error is overruled.
 III. {¶ 30} Appellant's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into Court of Appeals of Ohio, Ninth Judicial District execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
WHITMORE, P. J. BOYLE, J. CONCUR
[1] Mr. McLaughlin was not working as Appellant's supervisor at this time.