DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Jason Curtis ("Curtis"), appeals the judgment of the Summit County Court of Common Pleas which found that the Unemployment Compensation Review Commission ("UCRC") correctly found that Curtis was discharged for just cause. This Court affirms.
 I. {¶ 2} On October 11, 2005, Curtis was terminated by his employer, Infocision Management Corp. ("Infocision"). Curtis filed an application for unemployment benefits on the same day. On October 31, 2005, the Director of the Ohio Department of Job and Family Services ("ODJFS"), determined that Curtis had been terminated by Infocision without just cause. On November 21, 2005, Infocision appealed. On January 12, 2006, the Director of ODJFS, on redetermination, affirmed the initial determination. On February 1, 2006, Infocision *Page 2 
filed an appeal challenging the redetermination decision, and the Director of ODJFS transferred jurisdiction to the UCRC.
 {¶ 3} On August 25, 2006, a hearing was held before a UCRC hearing officer, and on August 31, 2006, the officer held that Curtis had been discharged for just cause. The officer also suspended Curtis' unemployment benefits until he met specific criteria, and found that Curtis was responsible to pay back over $7000 in overpayment for the time period starting October 22, 2005, and ending March 25, 2006. On September 19, 2006, Curtis appealed the officer's decision, but was denied further review by the UCRC.
 {¶ 4} Curtis appealed the decision of the UCRC officer in the Summit County Court of Common Pleas; however, the trial court remanded the proceeding to the UCRC because the recording of the original hearing was inaudible. The second UCRC hearing was held on August 23, 2007. On October 18, 2007, the UCRC again found that Curtis had been dismissed for just cause, and ordered him to repay the more than $7,000 owed for the overpayment. On November 19, 2007, Curtis filed a notice of appeal in the Summit County Court of Common Pleas, and on June 5, 2008, the trial court affirmed the findings of the UCRC, concluding that the decision of the UCRC was "supported by a preponderance of substantial, reliable and probative evidence, and is not unconstitutional, illegal, arbitrary, capricious, or unreasonable." Curtis timely appeals.
 II. ASSIGNMENT OF ERROR "THE DECISION BY THE UNEMPLOYMENT COMPENSATION REVIEW COMMISSION THAT APPELLEE'S DISCHARGE OF APPELLANT WAS SUPPORTED BY JUST CAUSE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 5} Curtis argues that the UCRC erred in finding that Infocision fired Curtis with just cause. This Court disagrees. *Page 3 
 {¶ 6} R.C. 4141.282(H) provides that a court of common pleas "shall hear the appeal" from a decision of the UCRC, and "shall affirm the decision of the commission[,]" unless "the court finds that the decision of the commission was unlawful, unreasonable, or against the manifest weight of the evidence[.]" While, the code section does not specifically address what standard of review is to be employed by courts of appeal, it has been found that "there is no distinction between the scope of review of common pleas and appellate courts regarding `just cause' determinations under the unemployment compensation law." Durgan v. OhioBur. of Emp. Servs. (1996), 110 Ohio App.3d 545, 551, citingTzangas, Plakas Mannos v. Ohio Bur. of Emp. Servs. (1995),73 Ohio St.3d 694, 697. "Therefore, an appellate court may only reverse an unemployment compensation eligibility decision by the Review Commission if the decision is unlawful, unreasonable, or against the manifest weight of the evidence." Moore v. Comparison Market, Inc., 9th Dist. No. 23255, 2006-Ohio-6382, at ¶ 7, citing Tzangas, 73 Ohio St.3d at 696. Furthermore, the focus is to be on the decision of the Review Commission, and not that of the common pleas court. Moore at ¶ 8.
 {¶ 7} When reviewing a UCRC decision, "`[e]very reasonable presumption must be made in favor of the [decision] and the findings of facts [of the Review Commission].'" Upton v. Rapid Mailing Servs., 9th Dist. No. 21714, 2004-Ohio-966, at ¶ 11, quoting Karches v. Cincinnati (1988),38 Ohio St.3d 12, 19. In addition, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment." Upton at ¶ 11, quotingKarches, supra.
 {¶ 8} Because the resolution of factual questions falls under the UCRC's scope of review, Ro-Mai Industries, Inc. v. Weinberg,176 Ohio App.3d 151, 2008-Ohio-301, at ¶ 8, this *Page 4 
Court's "role is to determine whether the decision of the UCRC is supported by evidence in the certified record." Id., citingDurgan, supra. If such support is found, then the reviewing court may not substitute its judgment for the judgment made by the UCRC. Id. "The fact that reasonable minds might reach different conclusions is not a basis for [] reversal." Irvine v. State Unemployment Comp. Bd. ofRev. (1985), 19 Ohio St.3d 15, 18.
 {¶ 9} "Under R.C. 4141.29, a party is entitled to unemployment compensation benefits if he or she quits with just cause or is discharged without just cause." Upton at ¶ 13. In addition, "[t]he claimant has the burden of proving her entitlement to unemployment compensation benefits under the statutory provision[.]" Irvine,19 Ohio St.3d at 17. Although "just cause" has not been clearly defined, "`[t]raditionally, just cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act.'" Id., quoting Peyton v. Sun T.V. (1975), 44 Ohio App.2d 10, 12. Finally, "[t]he determination of whether an employer had just cause to terminate an employee is a factual question primarily within the province of UCRC, and one which reviewing courts are precluded from inquiring into during these administrative appeals."Summit Cty. Fiscal Office v. Wood, 9th Dist. No. 23982, 2008-Ohio-2159, at ¶ 9.
 {¶ 10} In the case at hand, "[a] hearing was held before a Hearing Officer authorized to conduct hearings on behalf of the Review Commission on August 23, 2007[.]" The officer made findings of fact, and ultimately determined that Infocision terminated Curtis with just cause. The pertinent facts determined flushed out three specific incidents that the UCRC officer found justified Infocision's actions. The first incident was a confrontation Curtis had with one of his superiors, Jack Crouse ("Crouse"). The confrontation happened on May 27, 2005, and began when Crouse first inquired as to why some of Curtis' subordinates had left early for lunch, and *Page 5 
then later questioned Curtis when other subordinates of his returned late from lunch. Curtis became argumentative after Crouse asked about the subordinates' late return from lunch; and later when other employees appeared to be returning late from lunch, Curtis yelled across the room to Crouse asking him what he was going to do about the employees returning late. In response to this, Crouse asked Curtis to step outside of the room and into the hallway where their conversation would not be overheard by other employees. Curtis refused multiple requests to leave the room and speak with Crouse. Curtis was issued a written warning for insubordination a few days later.
 {¶ 11} The next incident occurred on October 6, 2005, when Curtis sent an email to one of his other supervisors, Steve Hornish ("Hornish"), in regard to a situation involving the discharge of one of Curtis' most productive subordinates. Curtis was an intern program supervisor, and the subordinate in question was one of the group of "communicators" under his direction. Hornish offered to speak with the liaison to the customer company for the account in question on behalf of Curtis' subordinate; however, Hornish never offered to speak with anyone else about the situation. After Hornish informed Curtis that he would not be speaking with anyone else about the situation, Curtis sent an email to his superior stating in part:
 "Let's be perfectly honest with each other. You DID indeed say last week that you were going to speak to Mike and Tim BOTH. I understand that we will just go on from here and Alice will be OK with that. But please do not lie straight to my face and tell me that you never said that you were going to talk to Tim and Mike. That is not professional or acceptable to me personally and/or morally."
 {¶ 12} The last incident occurred on the evening of October 7, 2005, when Curtis gave a directive to his subordinates that violated Infocision policy and procedure. The client for the program of which Curtis was in charge on October 7, suspended the program and specified that no calls were to be made to the group of customers listed in that programmed group. However, *Page 6 
Curtis allowed his subordinates to start calling customers from the suspended group before being informed that the program was no longer suspended.
 {¶ 13} Lastly, the UCRC officer found that Curtis was discharged on October 9, 2005, for insubordination to his supervisors and for violation of company procedures.
 {¶ 14} Upon thorough examination of the certified record and the UCRC officer's analysis, the UCRC's holding that Curtis was fired with just cause is supported by evidence in the certified record. Curtis testified that, although he felt justified in not leaving the room to go into the hallway and speak with Crouse, he did challenge Crouse in front of the all the employees in the room and then refused multiple times to leave the room and speak with Crouse outside of the presence of other employees. Curtis even testified that he "probably should have gone outside because he [was] my supervisor * * *." Curtis also acknowledged that he sent the email in question which accused his superior of both "lying to his face" and acting unprofessionally. Lastly, Curtis testified that he told his subordinates to "go ahead and call" the list that had been suspended without receiving word that the suspension of the account had been lifted. Although Curtis claims that his employees would have had no other work to do if they did not call on that account, his actions were clearly in violation of Infocision policy. Therefore, because the UCRC's decision is supported by evidence in the certified record, the decision is not "unlawful, unreasonable, or against the manifest weight of the evidence." Accordingly, Curtis' sole assignment of error is overruled.
 III. {¶ 15} Curtis' sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed. Judgment affirmed. *Page 7 
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
 WHITMORE, J., DICKINSON, J., CONCUR. *Page 1