[Cite as *Resource Title Agency, Inc. v. Ohio Dept. of Job & Family Servs.*, 2014-Ohio-3427.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Resource Title National Agency, Inc., | : | |
| Appellant-Appellant, | : | |
| | : | No. 14AP-39 |
| v. | : | (C.P.C. No. 13CV-10149) |
| Ohio Department of Job and Family Services, | : | (REGULAR CALENDAR) |
| | : | |
| Appellee-Appellee. | : | |
| | : | |

D E C I S I O N

Rendered on August 7, 2014

*Climaco, Wilcox, Peca, Tarantino & Garofoli Co., L.P.A., David M. Cuppage* and *Margaret M. Metzinger*, for appellant.

*Michael DeWine*, Attorney General, and *Patria V. Hoskins*, for appellee.

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Appellant, Resource Title National Agency, Inc. ("appellant"), appeals from a decision of the Franklin County Court of Common Pleas affirming a determination of the Unemployment Compensation Review Commission ("UCRC"), which found appellant was a successor in interest to Resource Title Agency, Inc. ("Resource Title").

## I. Facts and Procedural History

{¶ 2} On April 19, 2011, appellant entered an asset purchase agreement ("APA") with Resource Title. Under the terms of the agreement, appellant agreed to purchase Resource Title's furniture, fixtures, automobile, certain lease security deposits, good will and other intangible assets (including customer files, customer lists, trade names, trademarks, and trade secrets). Appellant also purchased Resource Title's accounts

receivable, escrow advances, and Resource Title's "work-in-process" except for a portion expressly excluded in the APA.

{¶ 3}   Appellant retained 61 of Resource Title's 69 employees and continued to operate at the same address as Resource Title.  Resource Title ceased business on December 31, 2010, and no evidence was presented showing any meaningful business operations after that date.  Appellant began operating on January 1, 2011.

{¶ 4}   Resource Title provided various commercial and retail real estate title services.  Appellant's sole shareholder, Leslie Rennell, was a former board member and president of Resource Title, as well as the ex-wife of Resource Title's sole shareholder, Richard Rennell, Sr.  Another former board member and the executive vice president of Resource Title, Andrew Rennell, became appellant's chief operating officer.  Testimony demonstrated that appellant was created in order to become a certified "woman-owned" business so it could have an opportunity to secure government contracts not otherwise obtainable by Resource Title.

{¶ 5}   The Ohio Department of Job and Family Services ("ODJFS") determined appellant was a successor in interest to Resource Title and required appellant to pay contributions into the Ohio Unemployment Compensation Fund at a rate of 8.80 percent.  Appellant appealed that decision.  In the Director's Reconsidered Decision on August 31, 2012, the director affirmed appellant's 8.80 percent contribution rate, effective January 1, 2011.  Appellant appealed the director's decision to the UCRC on September 10, 2012.

{¶ 6}   On June 18, 2013, a UCRC hearing officer conducted a telephone hearing and took testimony from Andrew Rennell, Leslie Rennell, and ODJFS' unemployment compensation specialist who initially determined appellant to be a successor in interest to Resource Title.  After considering the evidence and testimony, the UCRC affirmed that appellant was a successor in interest to Resource Title.  Appellant appealed UCRC's determination to the Franklin County Court of Common Pleas which affirmed the decision on December 17, 2013.  Appellant timely appealed that decision to this court.

## II. Assignments of Error

{¶ 7}   Appellant assigns the following assignment of error for our review:

> [1.] The Trial Court committed reversible error in affirming the decision of the Director, Ohio Department of Job and Family Services, in finding that Appellant is a successor in

interest to a transferring employer for purposes of transferring the employer's unemployment compensation account.

## III. Standard of Review

{¶ 8} The standard of review for appeals from UCRC is found in R.C. 4141.26(D)(2), which states that a common pleas court may affirm UCRC's decision where it is "supported by reliable, probative, and substantial evidence and is in accordance with law." A court of appeals' review of an administrative agency's ruling "is more limited than that of a common pleas court. This court does not weigh evidence." *Kate Corp. v. Ohio State Unemp. Comp. Rev. Comm.*, 10th Dist. No. 03AP-315, 2003-Ohio-5668, ¶ 7, citing *Childs v. Oil & Gas Comm.*, 10th Dist. No. 99AP-626 (Mar. 28, 2000), citing *Lorain City Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257 (1988). Although appellate courts are not permitted to make factual findings or weigh the credibility of the witnesses, the court does have a duty to determine whether the board's decision is supported by the evidence in the record. *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.*, 73 Ohio St.3d 694, 696 (1995). Administrative agencies have discretion to promulgate and interpret their own rules, and a reviewing court should give due deference to statutory interpretations by an administrative agency that has substantial experience and been delegated enforcement responsibility. *Weiss v. Pub. Util. Comm.*, 90 Ohio St.3d 15, 17-18 (2000), citing *Collinsworth v. W. Elec. Co.*, 63 Ohio St.3d 268, 272 (1992).

{¶ 9} Thus, a court of appeals determines only if the common pleas court abused its discretion. *Tzangas* at 696-97. In successor-in-interest cases, "this court has defined 'abuse of discretion' as connoting more than an error in judgment, but implying a decision that is without a reasonable basis and clearly wrong." *All Star Personnel, Inc. v. Unemp. Comp. Rev. Comm.*, 10th Dist. No. 05AP-522, 2006-Ohio-1302, ¶ 13, quoting *WLS Stamping Co., Inc. v. Admr., Ohio Bur. of Emp. Servs.*, 10th Dist. No. 93AP-278 (Dec. 14, 1993), citing *Angelkovski v. Buckeye Potato Chips Co.*, 11 Ohio App.3d 159 (10th Dist.1983).

## IV. Discussion

{¶ 10} Generally, R.C. 4141.24(F) provides two methods by which an employer may qualify as a successor in interest: (1) by operation of law or (2) through voluntary

application. Because appellant and Resource Title did not file an application to obtain successor-in-interest status, this appeal only concerns whether appellant acquired successor-in-interest status by operation of law. R.C. 4141.24(F) reads in part:

> If an employer transfers all of its trade or business to another employer or person, the acquiring employer or person shall be the successor in interest to the transferring employer and shall assume the resources and liabilities of such transferring employer's account, and continue the payment of all contributions, or payments in lieu of contributions, due under this chapter.

"Pursuant to [the] first method, successor-in-interest status arises automatically upon the transfer of the entire business of the predecessor." *All Star Personnel* at ¶ 16, citing *Makkas v. Unemp. Comp. Bd. of Rev.*, 18 Ohio St.3d 349, 350 (1985).

{¶ 11} Under the Ohio Administrative Code, a transferee is a successor in interest by operation of law where: "(1) [t]here is a transfer of all of the transferor's trade or business located in the state of Ohio; and (2) [a]t the time of the transfer the transferor is liable under Chapter 4141. of the Revised Code." Ohio Adm.Code 4141-17-04(A)(1) and (2). The Ohio Administrative Code also states that for the purposes of R.C. 4141.24, an employer's " 'trade or business' includes all real, personal and intangible property *integral to* the operation of the trade or business." (Emphasis added.) Ohio Adm.Code 4141-17-01(A).

{¶ 12} Appellant contends it is not a successor in interest by operation of law because Resource Title did not transfer all of its assets to appellant. More specifically, appellant points to the language from the APA which excludes a portion of Resource Title's "work in process" or the "funds payable to Seller with respect to work performed by Seller as to customer transactions which have not closed on or before the Effective Date [of the APA]." (R. 22, Record of Proceedings, exhibit C, Schedule A.)

{¶ 13} The record demonstrates the UCRC based its determination on sufficient and reliable evidence in affirming the director's redetermination. With respect to the assets expressly withheld in the APA, or the "work-in-process" accounts receivable, appellant failed to identify with any specificity the number of accounts retained, the amount owed on those accounts, and whether the accounts constituted a significant portion of Resource Title's business.

{¶ 14} The testimony at the June 2013 telephone hearing also provided sufficient evidence that Resource Title transferred all the property "integral" to its business, thereby making appellant a successor in interest to Resource Title. In addition to acquiring nearly all of Resource Title's tangible and intangible assets, employees, and remaining at the same physical location, appellant took Resource Title's "existing blueprint for processes and workflow." (R. 22, Tr. 27.) Appellant's chief operating officer testified that most of Resource Title's employees were kept in order to service the work in process. He also agreed that Resource Title's employees brought "institutional knowledge" and that appellant could not have "conducted the business and transitions" without carrying over most of those employees. (R. 22, Tr. 29, 31.)

{¶ 15} In addition to the testimony, the record shows Resource Title filed a "change in status" form with ODJFS in September 2011. The form was executed by Tim McFarland, who served as the director of human resources for Resource Title and, beginning January 1, 2011, occupied the same position with appellant. In response to the question of whether appellant was "taking over [Resource Title's] entire business organization," McFarland answered "no." As a follow-up question, the form requested an explanation of what portion of Resource Title was sold and what portion was retained. In response, McFarland wrote, "[a]ssets purchased by new company. No liabilities." Notably, Resource Title did not list any assets it was retaining. Based on the above evidence, the UCRC correctly determined that appellant received the assets "integral to" Resource Title's business or trade.

{¶ 16} Appellant also argued the "Pulte Title line of business" is an asset, and was excluded from the transfer as were the liabilities. (Appellant's Brief, 23.) However, appellant conceded at oral argument that Pulte Title was not an asset capable of being transferred by appellant, as appellant did not own Pulte Title, a separate legal entity. Similarly, appellant conceded Resource Title's failure to transfer liabilities to appellant is not relevant in determining successor-in-interest status. *See also Kate Corp.* at ¶ 13 (finding the establishment of successor-in-interest status does not require the acquisition of a predecessor's debts or obligations). Accordingly, we will not address those arguments and need to determine only if appellant acquired the property "integral to" Resource Title's trade or business.

{¶ 17} For the first time on appeal, appellant argues that "many of the most significant assets of Resource Title, its relationships with its underwriters and insurance carriers, were not transferred." (Appellant's Brief, 23.) However, in its Request for Reconsideration and Appeal from ODJFS' contribution rate determination, appellant failed to mention these underwriter or insurance relationships. Appellant only lists the assets excluded from the APA as the "work in process" defined in the APA and Resource Title's interest in "Pulte Homes of Ohio, LLC." Similarly, in its appeal to the Franklin County Court of Common Pleas, appellant stated it was "required to establish entirely new relationships with each and every underwriter." (R. 23, at 7.) However, as in its appeal to the UCRC, appellant does not include these underwriter relationships in its appeal to the common pleas court when discussing "assets" being excluded from the APA. While appellant previously explained it had to form new relationships with underwriters and secure new "errors and omissions" insurance, appellant never claimed such relationships amounted to transferable assets. Because the argument that these relationships are somehow assets was raised for the first time on appeal, the argument is waived. *Berning v. Ohio Dept. of Transp.*, 10th Dist. No. 11AP-837, 2012-Ohio-2991, ¶ 10, citing *Golden Christian Academy v. Zelman*, 144 Ohio App.3d 513, 516-17 (10th Dist.2001).

{¶ 18} After a review of the entire record and based upon the above evidence, we find the trial court did not abuse its discretion in finding that the UCRC's decision was supported by reliable, probative, and substantial evidence demonstrating Resource Title transferred all the property integral to its business to appellant, thereby establishing appellant is a successor in interest pursuant to R.C. 4141.24(F).

## V. Conclusion

{¶ 19} Based on a complete review of the record, we conclude the trial court did not abuse its discretion in affirming the decision of the UCRC. Accordingly, we overrule appellant's assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER, P.J., and KLATT, J., concur.

_____