[Cite as *Hampton's on King, Inc. v. Ohio Dept. of Job & Family Servs.*, 2014-Ohio-5666.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Hampton's on King, Inc., | : | |
| Appellant-Appellant, | : | No. 14AP-243 |
| | | (C.P.C. No. 13CVF-09-10147) |
| v. | : | |
| Ohio Department of Job & Family Services, | : | (ACCELERATED CALENDAR) |
| | : | |
| Appellee-Appellee. | : | |
| | : | |

D E C I S I O N

Rendered on December 23, 2014

*R.J. Donovan Co., LPA*, and *Richard J. Donovan*, for appellant.

*Michael DeWine*, Attorney General, and *Alan Schwepe*, for appellee.

APPEAL from the Franklin County Court of Common Pleas.

BROWN, J.

{¶ 1} Hampton's on King, Inc., appellant, has filed an appeal from the judgment of the Franklin County Court of Common Pleas, in which the court affirmed the decision of the Unemployment Compensation Review Commission ("commission" or "UCRC"), a division of the Ohio Department of Job & Family Services ("ODJFS"), appellee.

{¶ 2} CCAC, Inc. did business as B. Hampton's Bar and Grill ("B. Hampton's"), a restaurant in Columbus, Ohio. In 2008, appellant purchased CCAC's liquor license, rights to B. Hampton's name, the goodwill associated with B. Hampton's name, and some

tangible property used in CCAC's operation of B. Hampton's. After the purchase, appellant opened a restaurant named Hampton's on King, Inc.

{¶ 3} On January 10, 2012, ODJFS issued a report and determination of employer's liability and contribution rate, finding that appellant automatically inherited the unemployment compensation contribution rates of CCAC because appellant was the successor in interest to CCAC under R.C. 4141.24(F) and Ohio Adm.Code 4141-17-04.

{¶ 4} Appellant filed for reconsideration. On September 20, 2012, ODJFS issued its director's reconsidered decision affirming the final report.

{¶ 5} Appellant filed for review with the commission. On August 14, 2013, the commission mailed a decision in which it affirmed the director's reconsidered decision.

{¶ 6} Appellant appealed the commission's decision to the Franklin County Court of Common Pleas. On March 6, 2014, the common pleas court issued a decision and entry in which it affirmed the commission's decision. Appellant appeals the judgment of the trial court, asserting the following assignments of error:

> I. Common Pleas Failed to Apply the Proper Standard for Automatic Succession in Interest, of the Acquisition by Hampton's on King, Inc., of All of the Integral, Operational Assets of Its Transferor – R.C. § 4141.24(F) (1st Par.) & A.C. RR. 4141-17-04(A)(1), 4141-17-01(A).
>
> II. Common Pleas Abused Its Discretion, in Making Any Finding That Hampton's on King, Inc., Had Acquired All of the Integral, Operational Assets of B. Hampton's Bar And Grill.
>
> III. Common Pleas Erred and Abused Its Discretion, in Affording Discretion to the Unemployment Compensation Review Commission to Deviate from Its Applicable Regulatory Standards – A.C. RR. 4141-17-04(A)(1), 4141-17-01(A).
>
> IV. Common Pleas Erred, in Recognizing Any De Minimis Rule for Acquisition of All of a Transferor's Trade or Business – R.C. § 4141.24(F) (1st Par.).
>
> V. Common Pleas Abused Its Discretion, in Any Implicit Finding of Satisfaction of a De Minimus Rule – R.C. § 4141.24(F) (1st Par.).

{¶ 7}   We will address appellant's first and second assignments of error together. Appellant argues in its first assignment of error that the trial court erred when it failed to apply the proper standard for automatic succession in interest. Appellant argues in its second assignment of error that the trial court abused its discretion when it found that it had acquired all of CCAC's integral and operational assets. A trial court and an appellate court employ the same, well-established standard of review in appeals involving the UCRC: "[A] reviewing court may reverse the board's determination only if it is unlawful, unreasonable, or against the manifest weight of the evidence." *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.*, 73 Ohio St.3d 694, 697 (1995); R.C. 4141.282(H). When a reviewing court (whether a trial or appellate court) applies this standard, it may not make factual findings or determine witness credibility. *Irvine v. State Unemployment Comp. Bd. of Rev.*, 19 Ohio St.3d 15, 18 (1985). Factual questions remain solely within the commission's province. *Tzangas* at 696. Thus, a reviewing court may not reverse the commission's decision simply because "reasonable minds might reach different conclusions." *Irvine* at 18. The focus of an appellate court when reviewing an unemployment compensation appeal is on the commission's decision, not the trial court's decision. *Moore v. Comparison Mkt., Inc.*, 9th Dist. No. 23255, 2006-Ohio-6382, ¶ 8. In determining whether a commission's decision is or is not supported by the manifest weight of the evidence, this court applies the civil manifest weight of the evidence standard set forth in *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus, which holds: "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."

{¶ 8}   R.C. 4141.24(F) provides, in pertinent part:

> If an employer transfers all of its trade or business to another employer or person, the acquiring employer or person shall be the successor in interest to the transferring employer and shall assume the resources and liabilities of such transferring employer's account, and continue the payment of all contributions, or payments in lieu of contributions, due under this chapter.

{¶ 9} Ohio Adm.Code 4141-17-04 provides, in pertinent part:

(A) The transferee shall become a successor in interest by operation of law where:

(1) There is a transfer of all of the transferor's trade or business located in the state of Ohio; and

(2) At the time of the transfer the transferor is liable under Chapter 4141. of the Revised Code.

{¶ 10} Also, Ohio Adm.Code 4141-17-01(A) provides that, for the purposes of R.C. 4141.24, an employer's " '[t]rade or business' includes all real, personal and intangible property integral to the operation of the trade or business."

{¶ 11} Appellant argues that the above provisions explicitly require a transfer of "all" of an employer's trade or business. Thus, appellant argues, because it did not acquire "all" of CCAC's trade or business, it could not become a successor in interest by operation of law for purposes of unemployment compensation contribution rates. We addressed this issue in *Resource Title Agency, Inc. v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 14AP-39, 2014-Ohio-3427. In *Resource Title*, the appellant entered into an asset purchase agreement with Resource Title, agreeing to purchase Resource Title's furniture, fixtures, automobile, certain lease security deposits, goodwill, customer files, customer lists, trade names, trademarks, trade secrets, accounts receivable, escrow advances, and a portion of its work-in-process. The appellant retained 61 of Resource Title's 69 employees and continued to operate at the same address as Resource Title. Resource Title ceased business December 31, 2010, and the appellant began operating January 1, 2011. The appellant's sole shareholder was a former board member and president of Resource Title, as well as the ex-wife of Resource Title's sole shareholder. Another former board member and the executive vice president of Resource Title became appellant's chief operating officer. The appellant was created in order to become a certified "woman-owned" business so it could have an opportunity to secure government contracts not otherwise obtainable by Resource Title. ODJFS determined the appellant was a successor in interest to Resource Title. The UCRC affirmed the decision, as did the common pleas court.

{¶ 12} On appeal, the appellant contended it was not a successor in interest because Resource Title did not transfer "all" of its assets to the appellant. The appellant

pointed out that Resource Title did not transfer a portion of its work-in-process and certain other funds payable to Resource Title for work performed. In construing the "all of its trade or business" language in R.C. 4141.24(F), we found that Resource Title transferred all the property "integral" to its business, thereby making the appellant a successor in interest to Resource Title.

{¶ 13} Applying our holding in *Resource Title* to the present facts, we must find the UCRC's decision was supported by the manifest weight of the evidence. The UCRC found that the evidence and testimony established that CCAC transferred to appellant the liquor license held by CCAC, the rights to B. Hampton's name, the goodwill associated with that name, and certain elements of the decor of B. Hampton's operated by CCAC. The UCRC concluded that, based on these factors, the assets "integral" to conducting the business of the two entities at issue were transferred under the purchase agreement, and appellant was, thus, a successor in interest to CCAC.

{¶ 14} The UCRC's findings that CCAC transferred to appellant the assets integral to conducting business were supported by the testimony and evidence. Mary Lewis, an examiner for ODJFS, testified that CCAC transferred its liquor license to appellant; B. Hampton's ceased operations prior to Hampton's on King's opening; employees for B. Hampton's transferred to Hampton's on King; and there was common ownership and control between CCAC and appellant, namely, through Catherine Capuano ("Capuano"), who had owned B. Hampton's. Lewis said that filings with the secretary of state indicated Capuano was the director and authorized representative of CCAC. The secretary of state's filing for Hampton's on King indicated that its authorized representatives were Ted Lawson and Charles Capuano. The Franklin County Auditor listed the B. Hampton's owner as Capuano and had the same address as Charles Capuano's address on the secretary of state's filing. Lewis also said that the president of Hampton's on King, Lawson, signed a guarantee statement agreeing to guarantee Charles Capuano's outstanding obligations to the Ohio Bureau of Workers' Compensation and ODJFS, evincing a less than arm's length transaction between the two entities.

{¶ 15} Lewis further testified that a newspaper article in the Short North Gazette indicated that Hampton's on King was the successor and new location of B. Hampton's. The article said that Capuano was looking for a new location for the restaurant so that she

could have a patio. A photograph with the article indicates Catherine Capuano was an owner of the new restaurant. Another article in Columbus Alive indicated that Hampton's on King was the successor to B. Hampton's. The newspaper also provided a myspace.com website address that incorporated the B. Hampton's name. Lewis added that the website address for the new entity was www.bhamptonsonking.com.

{¶ 16} However, there was testimony that contradicted some of Lewis's testimony from Lawson, the owner/president of appellant, and Capuano. Lawson testified he bought the liquor license and some of the decor of CCAC. He said the liquor license was essential to his opening the business. The sale involved no kitchen or bar equipment or tables and chairs. The decor included wall hangings and some unique items that would capture the feel of B. Hampton's. He said neither Capuano nor any member of her family, played any part in the management, establishment, or ownership of Hampton's on King. Lawson said that Charles Capuano's name on the secretary of state filing was an error by his accountant. Lawson further testified that there was no transfer of employees between the two entities. He said he paid for the Short North Gazette article to be written, and the indication that Capuano was an owner was incorrect, but he was using Capuano as a marketing tool because the public was familiar with her. He said the statement in the Short North Gazette that Capuano can be found every day at the restaurant was not true. He admitted that Capuano came to Hampton's on King often to socialize and sometimes went into the kitchen and employee areas to talk to employees she knows. However, none of his employees have ever worked for Capuano to his knowledge. He testified that Capuano receives no compensation from appellant, and appellant has no other business relationships with Capuano. He said the article in Columbus Alive was written without his knowledge, and its statement that Capuano and he ran Hampton's on King together was incorrect. Lawson also testified that he is the sole shareholder of Hampton's on King. He said he took over some debt owed to the state of Ohio from B. Hampton's because he could not get the liquor license transferred until those debts were paid, and Capuano said she did not have the money to pay the debts.

{¶ 17} Capuano testified that she sold some of B. Hampton's furniture, including pictures and mirrors, to appellant. She had no position or employment with appellant. She said Lawson asked her to be portrayed as the owner of Hampton's on King in the

article in the Short North Gazette, even though she was not an owner. She said she goes to Hampton's on King to socialize but not to manage or be involved in the operations of the restaurant.

{¶ 18} Appellant maintains that CCAC's old restaurant name and goodwill, liquor permit, and some memorabilia and decor alone were insufficient to operate a tavern business. Things such as the physical premises, bar equipment, kitchen equipment, tables, chairs, jukeboxes, pinball machines, and inventory were still needed. However, while we agree that these additional factors would provide even greater support for UCRC's decision, UCRC had some competent, credible evidence to support its conclusion that the liquor license, the rights to the B. Hampton's name, the goodwill associated with that name, and elements of B. Hampton's decor, formed the integral aspects of the two businesses. How essential, or "integral," these assets were to appellant was highlighted by the testimony at trial. Lawson testified that obtaining CCAC's liquor license was essential to opening his business, and he said that the furniture and decor he purchased from CCAC was so he could continue the same feel as B. Hampton's. The continuation of B. Hampton's name and goodwill was so vital that Lawson paid to have an article placed in the Short North Gazette that was focused entirely on Capuano, her "ownership" of Hampton's on King, and her continuing presence "every day" at Hampton's on King. The Short North Gazette article also included many references to the continuation of numerous aspects of B. Hampton's, such as decor and ambiance, and indicated that Hampton's on King was a continuation of B. Hampton's at a new and better location. The article makes clear that appellant's purchase of B. Hampton's name, goodwill, and decor was essential or "integral" to the very existence and survival of Hampton's on King. Appellant's use of B. Hampton's name on its website and social media also reinforces the importance and value of the transfer of the B. Hampton's name and goodwill. For these reasons, we find that, even if we were to believe Lawson's testimony that Capuano was not a true owner of Hampton's on King, as the commission apparently agreed, there was sufficient, competent and credible evidence to support the commission's decision that CCAC transferred its integral assets to appellant. Therefore, appellant's first and second assignments of error are overruled.

{¶ 19} We will address appellant's third, fourth, and fifth assignments of error together.  Appellant argues in its third assignment of error that the trial court erred when it afforded discretion to the commission to deviate from its applicable regulatory standards. Appellant argues in its fourth assignment of error that the trial court erred when it recognized a de minimis rule for the acquisition of all of the transferor's trade or business. Appellant argues in its fifth assignment of error that the trial court abused its discretion when it implicitly found satisfaction of a de minimus rule.

{¶ 20} However, none of the arguments raised in these three assignments of error are relevant to or impact our analysis above. Our duty on appeal is to determine if the UCRC's determination was unlawful, unreasonable or against the manifest weight of the evidence, and we have already found it was not. Importantly, as stated above, the focus of an appellate court when reviewing an unemployment compensation appeal is on the commission's decision and not the trial court's decision. *Moore* at ¶ 8.  *See also Mustafa v. St. Vincent Family Ctrs., Inc.*, 10th Dist. No. 12AP-305, 2012-Ohio-5775, ¶ 6, citing *Moore*. Thus, appellant's arguments in these assignments of error are misdirected. For these reasons, we overrule appellant's third, fourth, and fifth assignments of error.

{¶ 21} Accordingly, appellant's five assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

KLATT and DORRIAN, JJ., concur.

_____